UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON FERRELL, | ) | 1:12CV0995 |
| | ) | |
| Petitioner | ) | |
| | ) | JUDGE JEFFREY HELMICK |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| NORTH CENTRAL CORR. INST., | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | <u>RECOMMENDATION</u> |

McHARGH, MAG. JUDGE

The petitioner Brandon Ferrell ("Ferrell") filed a petition through counsel for a writ of habeas corpus arising out of his 2008 conviction for two counts of forcible gross sexual imposition, with sexually violent predator specifications, in the Cuyahoga County (Ohio) Court of Common Pleas.  (<u>Doc. 1</u>.)  In his petition, Ferrell raises two grounds for relief:

> 1.  The petitioner was denied his constitutional right to due process of law because the trial court lacked jurisdiction over the case because the indictment included a time period during which the petitioner was a juvenile.

> 2.  The trial court violated petitioner's constitutional rights to due process of law, to a grand jury indictment, and to a fair trial when it allowed the State to amend the date of the indictment from a one month period during which petitioner was an adult to a four month period that included a time period during which petitioner was a juvenile.

(Doc. 1, § 12.)  The respondent has filed a Return of Writ (Doc. 4), and Ferrell has

filed a Traverse (doc. 8).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural

background:

> According to the testimony presented at Ferrell's trial, Ferrell became
> 18 years old on May 28, 2007.  He lived until that time with either his
> natural father, or, more often, with his mother's family at their home
> on West 44th Street in Cleveland.  This family consisted of Ferrell's
> mother, his stepfather, RM, his younger male siblings, TF and RF, and
> his much younger half-siblings, the female victim, TM, and AM, who
> was a baby.  TM was 4 years old.
>
> Once Ferrell turned 18, RM told him to "find himself a place" of his
> own.  Ferrell abided by this directive.  Thereafter, he "wasn't living in
> the home, but he was in and out."
>
> By the time Ferrell moved out of the home, his mother's family had
> been overseen for a number of years by the Cuyahoga County
> Department of Children and Family Services (hereinafter, the agency).
> This oversight was necessary because his mother was "lower
> functioning" and did not "have much control over any of the children,"
> his brothers had "behavior issues," RM had substance abuse problems,
> and TM and the baby had health vulnerabilities.
>
> In June 2007 the agency's social worker assigned to the family retired.
> Her replacement, Leah Johnson, took over.  Johnson met with the
> family, worked out a case plan with them, and visited nearly "three
> times a month" to ensure that the plan continued to help the family.
>
> Occasionally, Johnson also conducted "family team meetings" in the
> home.  At these meetings, "all the service providers involved" with the
> family would assemble and discuss with the parents how the plan
> might require modification.  One such meeting took place on a morning
> in late September 2007.

2

Johnson convened the meeting in the dining room.  She sat "at the head of the table," and, after the discussion got underway, found herself "sitting back letting everyone talk."  When Johnson dropped out of the adult conversation, she found herself "trying to give [the victim] ideas" of ways to keep herself occupied.

The victim continued to return to Johnson, who was the person present who was paying any attention to her, until, at one point, she "just kind of leaned over [Johnson's] chair and said, 'Brandon sticks his dick in my cookie.' " Johnson asked her what a "cookie" was, and TM responded, "You know."  Johnson stated that she did not know; TM then "pointed to her vagina."

At that, Johnson told the other adults she had to speak to TM in private.  Johnson took TM to her bedroom, where Johnson interviewed her.  Immediately thereafter, Johnson "called our hotline and reported the incident."  Johnson additionally referred TM for an evaluation at Metrohealth Medical Center's "Alpha Clinic."

Dr. Mark Feingold, a pediatrician and director of the clinic, met with TM on September 25, 2007.  In his subsequent written report, Feingold noted he received TM's "history" from both RM and Johnson, and obtained an "abstract" of the incident from Johnson.  According to the "abstract," TM told Johnson that Ferrell "had put his dick in her cookie and 'gooey stuff' came out," while, at another time, he "put his fingers in her cookie."  This activity "hurt her, making her cry."

Feingold also interviewed TM alone.  When he asked TM, "[w]hat sort of stuff does [Ferrell] do with you," she answered, "Has sex with me." Feingold repeated the question, and the victim elaborated, "He put his psa (spells out p-s-a)-his dick-in my cookie.  He put his finger in my cookie."  When asked "how often," TM responded, "He do that 2 times." She explained that her "cookie" was her crotch area, and "p-s-a" was "his dick."

Feingold performed a physical examination of TM that did not reveal any sign of injury to her genital tissue.  As a result of TM's clinical evaluation, Feingold made "initial assessments"; in relevant part, these included his assessment that TM gave him and Johnson "an explicit history of sexual abuse," and that her father stated TM complained her "cookie" was "hurting 2 weeks ago," which "may be

3

associated with sexual abuse."  Based upon TM's disclosures to him
and to Johnson, Feingold made a "medical diagnosis of sexual abuse."

Feingold's diagnosis led to TM's referral to Michael Bokmiller of the
agency's sexual abuse unit.  Bokmiller interviewed TM on October 17,
2007.

According to Bokmiller, he began the interview with the object of
"building rapport" with her, so he asked her about her family.  TM told
him Ferrell was "mean" because he was "asking [her] out for sex."
Bokmiller proceeded to ask TM what sex was, and she eventually
described it as a boy putting his "dick" in "a girl's cookie."
Subsequently, after Bokmiller provided her with "anatomically-correct"
pictures of a preschool-aged female and an adult male, she illustrated
her understanding by circling certain parts of the body.

Cleveland police detective Sherilyn Howard began her investigation of
the case by interviewing the child on October 25, 2007.  Howard asked
TM to identify body parts on anatomically-correct drawings.  While she
and TM "were going over everything, [the victim] just said that
Brandon touched me on my cookie."  Howard asked TM to circle on the
male drawing "what he touched her with."  TM "circled the penis."  She
also circled the hand.

Ferrell was indicted in this case on December 11, 2007.  Counts 1, 2
and 3 charged him with rape.  Each count contained two furthermore
clauses that alleged he compelled the victim by force and alleged the
victim was under 10 years old, and each also contained a sexually
violent predator specification.  The date of the offense was set forth on
each count as "September 2007."

On the date set for trial, the prosecutor made an oral motion to amend
the date of the offense as alleged in the indictment.  She explained
that, while the disclosure had been made in September, "the last time
that Mr. Ferrell lived in his parents' house was in May of 2007 when
he then became an adult himself and was asked to leave the home,"
therefore, the date of the offense should read "May 2007."  Since
defense counsel had no objection to the change, the trial court
permitted it.

The trial court at that point conducted a voir dire of TM; thereafter,
the court determined she was competent to testify.  Before the

4

proceedings adjourned for the day, Ferrell signed a waiver of his right
to a jury trial.

The following morning, the prosecutor made another oral motion to
amend the dates as set forth in the indictment.  She stated that after
further review of the information provided by TM and the victim's age,
"it should be a span" to "include May of 2007 through September of
2007."

Defense counsel objected on the ground that it was his "understanding"
the incident "was a one-time occurrence" involving three different acts.
Counsel argued that the change did not provide adequate notice to his
client.

The trial court disagreed.  In analyzing the issue, the trial court noted
that since TM had been only 4 years old, it was inclined to "give some
leeway to the State."  The court further noted that the requested time
frame encompassed both the originally-stated month and the month to
which no objection had been made.

The case then proceeded to trial.  After the state presented its case, the
trial court overruled Ferrell's motions for acquittal.  Ferrell elected to
present no evidence.

The trial court ultimately found Ferrell not guilty of rape, but, on
Counts 1 and 2, guilty of the lesser-included offense of gross sexual
imposition, with the sexually violent predator specification.   The court
imposed consecutive sentences of 4 years to life imprisonment on each
count.

(Doc. 4, RX 12, at 2-7; State v. Ferrell, No. 92573, 2010 WL 1110788, at *1-*3 (Ohio

Ct. App. Mar. 25, 2010) (footnotes omitted).)

Ferrell filed a timely direct appeal of his conviction through counsel, which

raised the following seven assignments of error:

1. The trial court lacked jurisdiction where the government failed to
prove that the appellant was over the age of eighteen at the time of
the offense.

2.  The trial court erred in allowing the state to amend the date of the indictment from a one month time frame to a twenty week time frame.

3.  The trial court erred in finding a five-year old witness to be competent to testify.

4.  The trial court erred in permitting testimony aimed at bolstering the victim's testimony in violation of State v. Boston (1989), 46 Ohio St.3d 108.

5.  Appellant's state constitutional right to a grand jury indictment and state and federal constitutional rights to due process were violated when his indictment omitted all the essential elements of the sexually violent predator specification.

6.  The trial court erred in sentencing the appellant to consecutive sentences based on the same incident and same victim in violation of Ohio's allied offense statute.

7.  The trial court erred in failing to make findings and offer its reasons for imposing a consecutive sentence in the instant matter.

(Doc. 4, RX 9.)  On March 25, 2010, the court of appeals affirmed his conviction, but remanded to the trial court to correct the journal entry to reflect what occurred on the record.  (Doc. 4, RX 12, at 19; Ferrell, 2010 WL 1110788, at *9.)

At that point, Ferrell filed a motion to dismiss the appeal, for lack of a final appealable order, to vacate its March 25, 2010 ruling, and to remand to the trial court for a complete judgment entry.  (Doc. 4, RX 13.)  The court of appeals denied the motion, finding the judgment of conviction to be a final appealable order in accord with State v. Baker, 119 Ohio St.3d 197, 839 N.E.2d 163 (2008).  (Doc. 4, RX 15.)

Ferrell also had filed a motion for reconsideration, seeking to have the court of appeals reconsider its decision on his first assignment of error, which challenged the trial court's jurisdiction.  (Doc. 4, RX 16.)  The court denied the motion. (Doc. 4, RX 18.)

Contemporaneously, Ferrell filed a third motion, to certify a conflict between the court's March 25 judgment, and a judgment of the Ninth District Court of Appeals, on the following question of law:  "Whether the court of common pleas lacks subject matter jurisdiction, absent a proper bindover, over a defendant who is a child during any period of time listed in the indictment."  (Doc. 4, RX 19.)  The court of appeals denied the motion.  (Doc. 4, RX 21.)

Ferrell filed a timely appeal to the Supreme Court of Ohio.  (Doc. 4, RX 23.) He set forth the following five propositions of law:

> 1.  The juvenile court has exclusive subject matter jurisdiction over any case concerning the child-defendant is a child [sic] during any period of time listed in the indictment.
>
> 2.  A trial court commits plain error when it permits an indictment to be amended to include a time period over which the trial court does not have subject matter jurisdiction.
>
> 3.  An indictment that includes a furthermore specification must identify all the elements necessary to sustain a conviction on that specification.
>
> 4.  A child-witness under the age of ten may be found competent to testify only after the trial court inquires into all five factors set-forth in State v. Frazier (1991), 61 Ohio St.3d 247.
>
> 5. Oregon v. Ice, infra, applies to R.C. 2929.14; therefore, the court shall state its reasons and make the appropriate findings before

imposing consecutive sentences to overcome the presumption favoring concurrent sentences in R.C. 2929.41.

(Doc. 4, RX 24.)

The court accepted jurisdiction as to the fifth proposition of law, which is not a claim pursued in this habeas petition.  See generally State v. Ferrell, 126 Ohio St.3d 1581, 934 N.E.2d 354 (2010).  The Supreme Court of Ohio went on to affirm the judgment of the court of appeals on the authority of State v. Hodge, 128 Ohio St.3d 1, 943 N.E.2d 768 (2011), cert. denied, 131 S.Ct. 3063 (2011), which found that the U.S. Supreme Court's decision in Oregon v. Ice, 555 U.S. 160 (2009), does not revive Ohio's former statutory scheme concerning consecutive sentencing, which had been held unconstitutional under State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006)[1].  (Doc. 4, RX 28; State v. Ferrell, 128 Ohio St.3d 234, 943 N.E.2d 534 (2011), at ¶15.)

Ferrell filed a motion for reconsideration on the first and second claims (doc. 4, RX 26), which was denied by the state high court on Dec. 1, 2010.  (Doc. 4, RX 22, docket; State v. Ferrell, 937 N.E.2d 1038 (2010).)

Ferrell filed a timely petition for a writ of habeas corpus.  (Doc. 1.)  The respondent filed a Return of Writ (doc. 4), and Ferrell filed a Traverse (doc. 8).

---

[1]  *Hodge* also ruled that state trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences.  *Hodge*, 128 Ohio St.3d at 1, 943 N.E.2d at 769 (syllabus).

8

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-413 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

The factual findings[2] made by the state courts are presumed correct, and the presumption of correctness may be rebutted by the petitioner only with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See, e.g., Lorraine, 291 F.3d at 422; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998), cert. denied, 527 U.S. 1040 (1999).  Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and that presumption of correctness extends to factual findings of a state appellate court based on the state trial record.  Bowling v. Parker, 344 F.3d 487, 497 (6th Cir. 2003), cert. denied, 543 U.S. 842 (2004) (citing Sumner v. Mata, 449 U.S. 539, 546-547 (1981)).

## III.  JURISDICTION OF TRIAL COURT

The first ground of the petition is:  "The petitioner was denied his constitutional right to due process of law because the trial court lacked jurisdiction

---

[2]  "Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors."  Mann v. Jones, No. 06-2209, 2009 WL 2461090, at *5 (6th Cir. Aug. 12, 2009).  Some courts unfortunately confuse the two sections, for example, by relying on Williams v. Taylor, 529 U.S. 362 (2000), to interpret Section 2254(d)(2).  The Supreme Court in Williams was explicitly interpreting the meaning of Section 2254(d)(1), not (d)(2).  See, e.g., Williams, 529 U.S. at 367, 412.

over the case because the indictment included a time period during which the petitioner was a juvenile." On direct appeal, Ferrell argued that, under state law, the court of common pleas lacked proper jurisdiction over Ferrell as a juvenile. (Doc. 4, RX 9, at 9-10.)

The state court of appeals overruled his assignment of error, and found that "the record contains support for the conclusion the indictment, both prior and subsequent to its amendment, alleged that Ferrell was over the age of 18 when the offenses were committed; therefore, the trial court did not lack jurisdiction in this case." (Doc. 4, RX 12, at 10; Ferrell, 2010 WL 1110788, at *5.) Ferrell has failed to rebut the presumption of correctness of the state court's factual findings with clear and convincing evidence. See generally doc. 8, at 17 (characterizing state court finding as "unreasonable"); Lorraine, 291 F.3d at 422; Warren, 161 F.3d at 360-361.

Ferrell claims that "transferring jurisdiction from juvenile to adult court is a critical phase of proceedings that triggers constitutional due process and fundamental fairness principles." (Doc. 8, at 13, citing Kent v. United States, 383 U.S. 541, 554 (1966), and In re Gault, 387 U.S. 1, 30-31 (1967).) Strictly speaking, a "transfer" was not involved here, as Ferrell did not appear in juvenile court.

Ferrell also argues that, under Ohio law, a judgment of conviction is void ab initio if the adult court lacked subject matter jurisdiction over the child-defendant. (Doc. 8, at 13-14, citing State v. Wilson, 73 Ohio St.3d 40, 43, 652 N.E.2d 196 (1995).) When a defendant is under the age of eighteen at the time of the offense

11

charged in the indictment, the juvenile court has exclusive subject-matter jurisdiction over the case, unless and until the proper bindover procedure is followed under state law.  Wilson, 73 Ohio St.3d at 43-44, 652 N.E.2d at 198-199. On direct appeal, Ferrell relied solely on state law to argue this claim.  See doc. 4, RX 9, at 9-10.

Ferrell now contends that juveniles in Ohio have a constitutional right, pursuant to the Due Process Clause, to a proper bindover proceeding before they become subject to prosecution in adult court.  (Doc. 8, at 14, citing Goss v. Lopez, 419 U.S. 565, 573-575 (1975), and Ford v. Wainwright, 477 U.S. 399, 428-429 (1986) (O'Connor, J., concurring in part).)  Ferrell concludes that the trial court improperly exercised jurisdiction over a case that alleged conduct while he was a juvenile, and "as a matter of law, the judgment of conviction is void and [Ferrell] is now entitled to relief on habeas review."  (Doc. 8, at 17, citing Kent, 383 U.S. at 554, Gault, 387 U.S. at 30-31, Wilson, 73 Ohio St.3d at 44, and other cases.)

The respondent contends that this claim is not appropriate for federal habeas review.  The respondent points out, correctly, that a federal habeas court may not issue the writ on the basis of a perceived error of state law.  (Doc. 4, at 34, citing Pulley v. Harris, 465 U.S. 37, 41 (1984).)  The respondent argues that a state criminal defendant has no federal constitutional right to any particular set of procedures to charge him, so long as the fair notice requirement of the due process

clause is satisfied.  (Doc. 4, at 34, citing Alexander v. Louisiana, 405 U.S. 625, 633 (1972).)

The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of Ohio law is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987); Lallathin v. Lazaroff, No. 2:05CV1155, 2006 WL 3257395, at *11 (S.D. Ohio Nov. 9, 2006).

Ferrell points to no Supreme Court case which holds that, constitutionally, a state must provide a separate court system for juvenile defendants.  Indeed, the Court has on occasion expressed doubts as to the "peculiar system" of juvenile courts:  "The constitutional and theoretical basis for this peculiar system is – to say the least – debatable."  Gault, 387 U.S. at 17.  See generally McKeiver v. Pennsylvania, 403 U.S. 528, 543-547 (1971) (discussing failures of juvenile system as a whole).

In Kent, the Supreme Court considered the requirements for a valid waiver of the jurisdiction of the juvenile court, so that a juvenile could be tried in the adult criminal court of the District of Columbia.  The decision turned on the relevant statutory language, rather than the U.S. Constitution, but the Court emphasized

13

the necessity that the "basic requirements of due process and fairness" be satisfied in the waiver proceedings.  Kent, 383 U.S. at 553-554.  However, "the Court did not specify the exact nature of the constitutional requirements of due process" involved. Oviedo, 809 F.2d at 327 (discussing Kent).  The Court limited its ruling to the statutory procedural error with respect to the waiver of jurisdiction, and declined to address broader claims which the parties proposed.  Kent, 383 U.S. at 551-552.

In Gault, the Court limited itself to the relationship of the Due Process Clause to "proceedings by which a determination is made as to whether a juvenile is a 'delinquent' as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution."  Gault, 387 U.S. at 13.  The Court held that adequate notice, "to comply with due process requirements, must be given sufficiently in advance of scheduled [juvenile] court proceedings so that reasonable opportunity to prepare will be afforded, and it must 'set forth the alleged misconduct with particularity.'"  Gault, 387 U.S. at 33.

In addition, the Gault Court found that "Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child."  Gault, 387 U.S. at 41.

14

Finally, the Court in Gault concluded that the constitutional privilege against self-incrimination is applicable in juvenile court proceedings.  Gault, 387 U.S. at 55.  On a related issue, the Court held that, "absent a valid confession, a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross-examination in accordance with our law and constitutional requirements." Gault, 387 U.S. at 57.  Because the criminal proceedings against Ferrell did not occur in juvenile court, the procedural safeguards discussed in Gault are not at issue here.

On the due process issue generally, Ferrell cites two Supreme Court cases. In Goss v. Lopez, 419 U.S. 565 (1975), the Supreme Court found that students facing temporary suspension had legitimate claims of entitlement to a public education under state law.  The state was not constitutionally required to set up a system of public education, but had done so, and required children within certain ages to attend, thus establishing a property interest.  The Court found that, having chosen to extend the right to an education to children generally, the state could "not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred." Goss, 419 U.S. at 573-574. The Court found that the students facing suspension were entitled to notice of the charges, and an opportunity for a hearing. Goss, 419 U.S. at 581-582.  Ferrell does not direct the court's attention to any Supreme Court case which holds that

15

recourse to a state's juvenile justice system is similarly a property or liberty interest.

In Ford v. Wainwright, the Supreme Court held that the Eighth Amendment prohibits a state from inflicting the death penalty upon a prisoner who is insane. Ford v. Wainwright, 477 U.S. 399 (1986).  Ferrell directs this court's attention to the concurring opinion of Justice O'Connor, who reasoned that, "regardless of the procedures the State deems adequate for determining the preconditions to adverse official action, federal law defines the kind of process a State must afford prior to depriving an individual of a protected liberty or property interest." Ford, 477 U.S. at 428-429 (O'Connor, J., concurring).  Justice O'Connor went on to state that the one "fundamental requisite" of due process is that an individual is entitled to an "opportunity to be heard." Ford, 477 U.S. at 430.  The majority did not find, and the question was not before the Court, that recourse to a state's juvenile justice system is similarly a protected property or liberty interest.

In none of the Supreme Court cases cited by Ferrell was it held that a state must proceed in juvenile court, as opposed to adult court, against a criminal defendant of a defined age[3] (whether it be seventeen or eighteen).  See generally

---

[3]  In fact, the Tenth Circuit has noted that "twenty-nine states have enacted statutes under which juveniles of a certain age who have committed certain acts will automatically be tried in adult courts." Gonzales v. Tafoya, 515 F.3d 1097, 1116 (10th Cir.), cert. denied, 555 U.S. 890 (2008); see also Deel v. Jago, 967 F.2d 1079, 1091 (6th Cir. 1992); and see Gonzales, 515 F.3d at 1115 (quoting Gault, 387 U.S. at 16) (at common law, children seven years and older were subject to arrest and trial, like adult offenders).

State v. Hanning, 89 Ohio St.3d 86, 90. 728 N.E.2d 1059, 1062 (2000) (Ohio statutory scheme provides for mandatory transfer of juveniles accused of certain crimes, removing judicial discretion).  Neither did the Court hold that a state was constitutionally required to have a separate juvenile system at all, nor did any of the cases cited define recourse to a state's juvenile justice system as a property or liberty interest.  Ferrell has failed to demonstrate that the state court adjudication was  contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

In addition, this court does not have jurisdiction to consider a federal claim in a habeas petition which was not fairly presented to the state courts.  Baldwin v. Reese, 541 U.S. 27 (2004); Jacobs v. Mohr, 265 F.3d 407, 415 (6th Cir. 2001).  To "fairly present" the claim to the state courts, a habeas petitioner must present his claim as a federal constitutional issue, not as an issue arising under state law. Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984).  Ferrell argued this claim only as a state law claim, not as a federal constitutional claim.  See doc. 4, RX 9, at 9-10.

The petition should not be granted on the basis of the first ground.  Ferrell did not present his claim to the state courts as a federal constitutional issue. Moreover, Ferrell has failed to demonstrate that the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

17

## IV.  INDICTMENT

The second ground of the petition is:

> The trial court violated petitioner's constitutional rights to due process of law, to a grand jury indictment, and to a fair trial when it allowed the State to amend the date of the indictment from a one month period during which petitioner was an adult to a four month period that included a time period during which petitioner was a juvenile.

(Doc. 1, §12.)

On direct appeal, Ferrell argued that he had a right under the Ohio Constitution to an indictment, and that Ohio courts had recognized that the right to an indictment "provides an inalienable protection to the defendant that he will be tried on the same essential facts on which the grand jury found probable cause." (Doc. 4, RX 9, at 11, quoting State v. Vitale, 96 Ohio App.3d 695, 699, 645 N.E.2d 1277 (Ohio Ct. App. 1994)).  Ferrell also claimed that this right was "part of the federal and state constitutional rights to due process."  (Doc. 4, RX 9, at 11, citing Vitale, 96 Ohio App.3d at 701, and Ford, 477 U.S. at 428-429 (O'Connor, J., concurring).)  In addition, Ferrell contended, under Vitale, that he was improperly convicted of offenses "outside the grand jury's contemplation when the grand jury returned a true bill of indictment."  (Doc. 4, RX 9, at 13.)

The state court of appeals rejected his arguments, ruling, in part:

> Ferrell next argues the amendment of the indictment to reflect a range of dates between May 28 and September 2007 constituted error. This court disagrees.  Crim.R. 7(D) allows a trial court to amend an indictment "at any time," as long as "no change is made in the name or identity of the crime charged."  See also, R.C. 2941.28; R.C. 2941.30.

18

\* \* \* \* \* \*

In this case, the language of the original and the amended indictments remained the same, with the original indictment asserting that an adult Ferrell committed the offenses upon the 4-year-old victim.  No change occurred in the potential penalty involved.

Moreover, the error of the date in the original indictment was "clerical" in nature, and the subsequent changes to the date that the prosecutor requested were to the same effect.  This conclusion is supported by defense counsel's acquiescence to the first amendment requested by the prosecutor.

Finally, this court has previously noted that, in cases involving sexual abuse against children, indictments need not state with specificity the dates of the alleged abuse, as long as the prosecution establishes that the offenses occurred within the time frame alleged.

(Doc. 4, RX 12, at 10-11; Ferrell, 2010 WL 1110788, at *5 (internal citations omitted).)

Ferrell claims that due process requires the prosecution "to inform criminal defendants about how each count in an indictment is different from another." (Doc. 8, at 18.)  He relies on a Sixth Circuit case for his contention that:  "The notice requirement is so important that when a person is convicted of a crime which was not properly presented to a grand jury, one cannot presume that the grand jury would have included this crime in its indictment and the resulting conviction cannot stand." (Doc. 8, at 18-19, citing United States v. Ford, 872 F.2d 1231, 1236 (6th Cir. 1989), cert. denied, 495 U.S. 918 (1990).)

Ford involved a federal criminal conviction, which implicated issues concerning the Fifth Amendment grand jury requirement.  See generally Ford, 872

19

F.2d at 1235.  In addition, Ford was decided by the Sixth Circuit, and the standard for habeas review is whether the state court decision "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Williams, 529 U.S. at 412-413  (emphasis added).  The Supreme Court has clarified that the source of "clearly established federal law" is limited to the holdings of the U.S. Supreme Court.  Id. at 412.

Ferrell presents the following arguments concerning his indictment to this court:

> The amended indictment in Ferrell's case was constitutionally deficient in two respects.  First, with the changing time frames and inconsistent evidence/discovery it was impossible to defend against the charges.  Second, the indistinguishable nature of the charges made it impossible to ascertain the crimes with which Brandon Ferrell was charged – in anything but general terms.

(Doc. 8, at 20.)

## A.  Nature of the Charges

The second "deficiency," alleging the nature of the charges as "carbon copy charges," was not presented to the state courts for review.  See generally doc. 4, RX 9, at 11-14.  Ferrell did not raise this argument in state court, that his convictions were based on "undifferentiated, carbon copy indictments."  (Doc. 8, at 25.)

To satisfy the AEDPA's exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The Sixth Circuit has held that

20

"the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998).  That the factual basis for the theories is related would not save the claim.  Lott v. Coyle, 261 F.3d 594, 607 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002).

This court does not have jurisdiction to consider a federal claim in a habeas petition which was not fairly presented to the state courts.  Baldwin v. Reese, 541 U.S. 27 (2004); Jacobs v. Mohr, 265 F.3d 407, 415 (6th Cir. 2001).  The petition should not be granted on the basis of this claim because it was not fairly presented to the state courts, thus it was not properly exhausted.

### B.  Time Frame of Charges

On direct appeal, Ferrell claimed that the trial court erred in allowing the state to amend the date of the indictment from a one month time frame to a twenty week time frame.  (Doc. 4, RX 9.)  Ferrell contends that "[t]he amended timeframe was never presented to the Grand Jury, and, it is impossible to determine whether the facts presented at trial actually formed the basis of the indictment."  (Doc. 8, at 20.)  Ferrell also complains that the late amendment of the indictment on the eve of trial was improper.  Id. at 21.

The U.S. Supreme Court has stated that, generally, "the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings."  Knewel v. Egan, 268 U.S. 442, 446 (1925).  The main Constitutional issue in this context is whether the

21

indictment provides the defendant with sufficient information of the charged offense, to enable him to defend himself against the accusations. Roe v. Baker, 316 F.3d 557, 570 (6th Cir. 2002), cert. denied, 540 U.S. 853 (2003). See also Cole v. Arkansas, 333 U.S. 196, 201 (1948); Hartman v. Lee, 283 F.3d 190, 195 n.5 (4th Cir. 2002), cert. denied, 537 U.S. 1114 (2003). "Any other deficiencies in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding." Roe, 316 F.3d at 570 (quoting Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986)).

Although the Fifth Amendment to the U.S. Constitution requires the use of a grand jury indictment in federal prosecutions, the Supreme Court has ruled that requirement is not binding on the states. See, e.g., Campbell v. Louisiana, 523 U.S. 392, 398-399 (1998) (citing Hurtado v. California, 110 U.S. 516 (1884)); Williams v. Haviland, 467 F.3d 527, 531-532 (6th Cir. 2006); Fawcett v. Bablitch, 962 F.2d 617, 618 (7th Cir. 1992) (Hurtado, which holds that 5th Amendment indictment clause does not apply to states, has never been questioned); Watson v. Jago, 558 F.2d 330, 337 (6th Cir. 1977); see also McDonald v. City of Chicago, 130 S.Ct. 3020, 3031 (2010); Wilson v. Lindler, 8 F.3d 173, 174 (4th Cir. 1993) (en banc), cert. denied, 510 U.S. 1131 (1994). "Arguments pro and con about the requisites of indictments [concerning a state criminal conviction] therefore do not matter." Fawcett, 962 F.2d at 618.

Because a grand jury indictment is not constitutionally required in a state criminal proceeding, cases cited by Ferrell such as United States v. Resendiz-Ponce (doc. 8, at 19), which concerned the question of "whether the omission of an element of a criminal offense from a <u>federal</u> indictment[4] can constitute harmless error," are of limited utility in determining the constitutional due process issues which may involve habeas relief from a state conviction.  See United States v. Resendiz-Ponce, 549 U.S. 102, 103 (2007) (emphasis added); see generally Coles v. Smith, No. 1:10 CV525, 2013 WL 474706, at *6 (N.D. Ohio Feb. 7, 2013).

Similarly, in Russell v. United States, the Supreme Court addressed a federal criminal statute (for refusal to testify before a Congressional committee) with an eye toward "the duty to accord a person prosecuted for this statutory offense every safeguard which the law accords in <u>all other federal criminal cases</u>."  Russell v. United States, 369 U.S. 749, 755 (1962) (emphasis added).[5]  Russell noted that, in a federal prosecution, both the Fifth Amendment and the Sixth Amendment come into play.  Russell, 369 U.S. at 760-761.  Cases which interpret the indictment

---

[4]  The Court in *Resendiz-Ponce* found the indictment at issue complied with Rule 7 of the Federal Rules of Criminal Procedure.  *Resendiz-Ponce*, 549 U.S. at 110.

[5]  *Russell* went on to address "the protections which an indictment is intended to guarantee," and set forth "two of the criteria by which the sufficiency of an indictment is to be measured."  *Russell*, 369 U.S. at 763.  The repeated references to an "indictment," and the context of the case (federal prosecution) indicate that the Court must have been addressing the Fifth Amendment indictment clause in that section of the opinion.  *See, e.g.*, *Campbell*, 523 U.S. at 398-399 (5th Amendment indictment clause does not apply to states); *Hurtado*, 110 U.S. 516; *Wilson*, 8 F.3d at 174; *Fawcett*, 962 F.2d at 618.

23

clause of the Fifth Amendment alone are generally inapposite in a habeas challenge to a state conviction.  Fawcett, 962 F.2d at 618; see also Coles, 2013 WL 474706, at *6.  Federal constitutional requirements arising from the Fifth Amendment indictment clause, which are binding in federal criminal cases, are not binding on the states, even if the state adopts a grand jury system.  Watson, 558 F.2d at 337 (citing Alexander v. Louisiana, 405 U.S. 625, 633 (1972)).

The Constitutional concerns which may arise from a state court indictment are 1) the "most basic ingredient of due process, a person's right to reasonable notice of the charge against him," as guaranteed by the Sixth Amendment, through the Fourteenth Amendment; Goodloe v. Parratt, 605 F.2d 1041, 1045 (8th Cir. 1979); see also Cole, 333 U.S. at 201; Russell, 369 U.S. at 763; and, 2) the Double Jeopardy concern "that the record shows with accuracy to what extent he may plead a former acquittal or conviction," Russell, 369 U.S. at 764.  (Ferrell does not raise double jeopardy concerns.)

As Russell pointed out, the Sixth Amendment provides that, in all criminal prosecutions, "the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation" against him.  Russell, 369 U.S. at 761.  The Supreme Court has found that "notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."  Cole, 333 U.S. at 201; see also Gray v. Netherland, 518 U.S. 152, 167-168 (1996) (defendant's

24

right to notice of charges against him is well established); Coles, 2013 WL 474706, at *7.  The concern for this federal habeas court, then, is essentially a due process issue grounded in the Sixth Amendment.  Fawcett, 962 F.2d at 618; Goodloe, 605 F.2d at 1045.

Ferrell does not contend that the indictment did not give him sufficient notice of the charges against which he had to defend, except insofar as the indictment was amended to expand the time period during which the crime was alleged to have occurred.  Amendments to an indictment are considered by federal courts as "primarily a matter of state law."  Watson, 558 F.2d at 337.  Under Ohio law, "the State generally may amend an indictment or bill of particulars, even after trial for the purpose of conforming to the evidence, so long as 'no change is made in the name or identity of the crime charged.'"  Geboy v. Brigano, 489 F.3d 752, 762 (6th Cir. 2007) (citing cases); Smith v. Warden, Civ. No. 1:09CV251, 2010 WL 3075166, at *21-*22 (S.D. Ohio Apr. 14, 2010).  As the state court of appeals here pointed out, "the language of the original and the amended indictments remained the same [as to the crimes alleged], with the original indictment asserting that an adult Ferrell committed the offenses upon the 4-year-old victim.  No change occurred in the potential penalty involved."  (Doc. 4, RX 12, at 11; Ferrell, 2010 WL 1110788, at *5.)

The petition should not be granted on the basis of the second ground.  Ferrell has failed to demonstrate that the state court decision was  contrary to, or involved

an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## V.  SUMMARY

The petition for a writ of habeas corpus should be denied.  The petition should not be granted on the basis of the first ground.  Ferrell did not present his claim to the state courts as a federal constitutional issue.  In addition, Ferrell has failed to demonstrate that the state court adjudication was  contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

As to the second ground as well, Ferrell failed to demonstrate that the state court decision was  contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, so the petition cannot be granted on basis of the second ground.

## VI.  RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be denied.


Dated:   Dec. 10, 2013            /s/ Kenneth S. McHargh
                                  Kenneth S. McHargh
                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).