IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Brandon Ferrell,

      Petitioner,      Case No. 1:12 CV 995

  -vs-

                 MEMORANDUM OPINION
                 AND ORDER

North Central Correctional Institution,

      Respondent.

  Brandon Ferrell has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to Magistrate Judge Kenneth S. McHargh for findings of fact, conclusions of law, and recommendations. The Magistrate Judge issued a report recommending that I deny the petition. This matter is before me pursuant to Ferrell's timely objections to the Magistrate Judge's report.

  In accordance with *United States v. Curtis*, 237 F.3d 598, 602–03 (6th Cir. 2001), I have made a de novo determination of the Magistrate Judge's report. For the reasons stated below, I adopt the report and dismiss Ferrell's petition for a writ of habeas corpus. *See* 28 U.S.C. § 636(b)(1).

## I. STATE PROCEDURAL HISTORY

  The Ohio Court of Appeals summarized Ferrell's case as follows:

  According to the testimony presented at Ferrell's trial, Ferrell became 18 years old on May 28, 2007. He lived until that time with either his natural father, or, more often, with his mother's family at their home on West 44th Street in Cleveland. This family consisted of Ferrell's mother, his stepfather, RM, his younger male siblings, TF and RF, and his much younger half-siblings, the female victim, TM, and AM, who was a baby. TM was 4 years old.
  Once Ferrell turned 18, RM told him to "find himself a place" of his own.

Ferrell abided by this directive.  Thereafter, he "wasn't living in the home, but he was in and out."

By the time Ferrell moved out of the home, his mother's family had been overseen for a number of years by the Cuyahoga County Department of Children and Family Services (hereinafter, the agency).  This oversight was necessary because his mother was "lower functioning" and did not "have much control over any of the children," his brothers had "behavior issues," RM had substance abuse problems, and TM and the baby had health vulnerabilities.

In June 2007 the agency's social worker assigned to the family retired. Her replacement, Leah Johnson, took over.  Johnson met with the family, worked out a case plan with them, and visited nearly "three times a month" to ensure that the plan continued to help the family.

Occasionally, Johnson also conducted "family team meetings" in the home.  At these meetings, "all the service providers involved" with the family would assemble and discuss with the parents how the plan might require modification.  One such meeting took place on a morning in late September 2007.

Johnson convened the meeting in the dining room.  She sat "at the head of the table," and, after the discussion got underway, found herself "sitting back letting everyone talk."  When Johnson dropped out of the adult conversation, she found herself "trying to give [the victim] ideas" of ways to keep herself occupied.

The victim continued to return to Johnson, who was the person present who was paying any attention to her, until, at one point, she "just kind of leaned over [Johnson's] chair and said, 'Brandon sticks his dick in my cookie.'"  Johnson asked her what a "cookie" was, and TM responded, "You know."  Johnson stated that she did not know; TM then "pointed to her vagina."

At that, Johnson told the other adults she had to speak to TM in private.  Johnson took TM to her bedroom, where Johnson interviewed her.  Immediately thereafter, Johnson "called our hotline and reported the incident."  Johnson additionally referred TM for an evaluation at Metrohealth Medical Center's "Alpha Clinic."

Dr. Mark Feingold, a pediatrician and director of the clinic, met with TM on September 25, 2007.  In his subsequent written report, Feingold noted he received TM's "history" from both RM and Johnson, and obtained an "abstract" of the incident from Johnson.  According to the "abstract," TM told Johnson that Ferrell "had put his dick in her cookie and 'gooey stuff' came out," while, at another time, he "put his fingers in her cookie."  This activity "hurt her, making her cry."

Feingold also interviewed TM alone.  When he asked TM, "[w]hat sort of stuff does [Ferrell] do with you," she answered, "Has sex with me."  Feingold repeated the question, and the victim elaborated, "He put his psa (spells out p-s-a)-his dick-in my cookie.  He put his finger in my cookie."  When asked "how often," TM responded, "He do that 2 times."  She explained that her "cookie" was her crotch area, and "p-s-a" was "his dick."

Feingold performed a physical examination of TM that did not reveal any sign of injury to her genital tissue.  As a result of TM's clinical evaluation, Feingold made "initial assessments"; in relevant part, these included his assessment that TM

2

gave him and Johnson "an explicit history of sexual abuse," and that her father stated TM complained her "cookie" was "hurting 2 weeks ago," which "may be associated with sexual abuse." Based upon TM's disclosures to him and to Johnson, Feingold made a "medical diagnosis of sexual abuse."

Feingold's diagnosis led to TM's referral to Michael Bokmiller of the agency's sexual abuse unit. Bokmiller interviewed TM on October 17, 2007.

According to Bokmiller, he began the interview with the object of "building rapport" with her, so he asked her about her family. TM told him Ferrell was "mean" because he was "asking [her] out for sex." Bokmiller proceeded to ask TM what sex was, and she eventually described it as a boy putting his "dick" in "a girl's cookie." Subsequently, after Bokmiller provided her with "anatomically-correct" pictures of a preschool-aged female and an adult male, she illustrated her understanding by circling certain parts of the body.

Cleveland police detective Sherilyn Howard began her investigation of the case by interviewing the child on October 25, 2007. Howard asked TM to identify body parts on anatomically-correct drawings. While she and TM "were going over everything, [the victim] just said that Brandon touched me on my cookie." Howard asked TM to circle on the male drawing "what he touched her with." TM "circled the penis." She also circled the hand.

Ferrell was indicted in this case on December 11, 2007. Counts 1, 2 and 3 charged him with rape. Each count contained two furthermore clauses that alleged he compelled the victim by force and alleged the victim was under 10 years old, and each also contained a sexually violent predator specification. The date of the offense was set forth on each count as "September 2007."

On the date set for trial, the prosecutor made an oral motion to amend the date of the offense as alleged in the indictment. She explained that, while the disclosure had been made in September, "the last time that Mr. Ferrell lived in his parents' house was in May of 2007 when he then became an adult himself and was asked to leave the home," therefore, the date of the offense should read "May 2007." Since defense counsel had no objection to the change, the trial court permitted it.

The trial court at that point conducted a voir dire of TM; thereafter, the court determined she was competent to testify. Before the proceedings adjourned for the day, Ferrell signed a waiver of his right to a jury trial.

The following morning, the prosecutor made another oral motion to amend the dates as set forth in the indictment. She stated that after further review of the information provided by TM and the victim's age, "it should be a span" to "include May of 2007 through September of 2007."

Defense counsel objected on the ground that it was his "understanding" the incident "was a one-time occurrence" involving three different acts. Counsel argued that the change did not provide adequate notice to his client.

The trial court disagreed. In analyzing the issue, the trial court noted that since TM had been only 4 years old, it was inclined to "give some leeway to the State." The court further noted that the requested time frame encompassed both the originally-stated month and the month to which no objection had been made.

The case then proceeded to trial. After the state presented its case, the trial

3

>court overruled Ferrell's motions for acquittal. Ferrell elected to present no evidence.
>
>The trial court ultimately found Ferrell not guilty of rape, but, on Counts 1 and 2, guilty of the lesser-included offense of gross sexual imposition, with the sexually violent predator specification. The court imposed consecutive sentences of 4 years to life imprisonment on each count.

*State v. Ferrell*, No. 92573, 2010 WL 1110788, at *1–3 (Ohio Ct. App. Mar. 25, 2010).

On appeal to the Ohio Court of Appeals, Turner argued:

> I. The trial court lacked jurisdiction where the government failed to prove that the appellant was over the age of eighteen at the time of the offense.
>
> II. The trial court erred in allowing the state to amend the date of the indictment from a one month time frame to a twenty week time frame.
>
> III. The trial court erred in finding a five-year-old witness to be competent to testify.
>
> IV. The trial court erred in permitting testimony aimed at bolstering the victim's testimony in violation of *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220.
>
> V. Appellant's state constitutional right to a grand jury indictment and state and federal constitutional rights to due process were violated when his indictment omitted all the essential elements of the sexually violent predator specification.
>
> VI. The trial court erred in sentencing the appellant to consecutive sentences based on the same incident and the same victim in violation of Ohio's allied offense statute.
>
> VII. The trial court erred in failing to make findings and offer its reasons for
>
> imposing a consecutive sentence in the instant matter.

*Id.* at *4. The Ohio Court of Appeals subsequently affirmed Ferrell's convictions, but remanded the case to the trial court to correct the journal entry to reflect what had occurred on the record. *Id.* at *8.

Ferrell then filed a motion to dismiss the appeal for lack of a final appealable order, to vacate the court's March 25, 2010 ruling, and to remand the case to the trial court for a complete judgment

4

entry. The motion was denied because the court found the judgment of conviction was a final appealable order. (Doc. No. 4, Ex. 13, 15). Ferrell also had filed a motion for reconsideration, seeking to have the court of appeals reconsider its decision on his first assignment of error, which challenged the trial court's jurisdiction. The motion was denied. (Doc. No. 4, Ex. 16, 18).

Ferrell filed a third motion, to certify a conflict between the court's decision and a decision by the Ninth District Court of Appeals, on the following question of law: "Whether the court of common pleas lacks subject matter jurisdiction, absent a proper bindover, over a defendant who is a child during *any* period of time listed in the indictment." (emphasis in original). This motion was also denied. (Doc. No. 4, Ex. 19, 21).

Ferrell filed a timely appeal with the Supreme Court of Ohio raising the following arguments:

> Proposition of Law I:
>
> The juvenile court has exclusive subject matter jurisdiction over any case concerning the child-defendant is a child [sic] during any period of time listed in the indictment.
>
> Proposition of Law II:
>
> A trial court commits plain error when it permits an indictment to be amended to include a time period over which the trial court does not have subject matter jurisdiction.
>
> Proposition of Law III:
>
> An indictment that includes a furthermore specification must identify all the elements necessary to sustain a conviction on that specification.
>
> Proposition of Law IV:
>
> A child-witness under the age of ten may be found competent to testify only after the trial court inquires into all five factors set-forth in *State v. Frazier* (1991), 61 Ohio St.3d 247.

5

>Proposition of Law V:
>
>*Oregon v. Ice*, infra applies to R.C. 2929.14; therefore, the court shall state its reasons and make the appropriate findings before imposing consecutive sentences to overcome the presumption favoring concurrent sentences in R.C. 2929.41.

(Doc. No. 4, Ex. 24).

The Supreme Court of Ohio accepted jurisdiction as to the fifth proposition of law. However, the court subsequently affirmed Ferrell's convictions. (Doc. No. 4, Ex. 28). Ferrell moved for reconsideration of his first and second claims, but the motion was denied. (Doc. No. 4, Ex. 22, 26).

Ferrell then filed his petition for a writ of habeas corpus raising the following grounds for relief:

>FIRST CLAIM FOR RELIEF: Petitioner was denied his constitutional right to due process of law because the trial court lost jurisdiction over the case when the State amended the indictment to include a time period during which the petitioner was a juvenile.
>
>SECOND CLAIM FOR RELIEF: [A]n indictment, amended at the eleventh hour to drastically expand the operative timeframe and comprised of multiple undifferentiated counts, some of which are dismissed and others of which are ambiguously acquitted, violated petitioner's rights to due process, notice and the prohibition against double jeopardy.

(Doc. No. 1).

## II.  STANDARD OF REVIEW

Last month the Supreme Court of the United States reemphasized the standard federal courts must use regarding petitions for writs of habeas corpus:

>Section 2254(d) of Title 28 provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

> "This standard," we recently reminded the Sixth Circuit, "is 'difficult to meet.'" *Metrish v. Lancaster*, 569 U.S. ——, —— (2013) (slip op., at 4–5). "'[C]learly established Federal law'" for purposes of § 2254(d)(1) includes only "'the holdings, as opposed to the dicta, of this Court's decisions.'" *Howes v. Fields*, 565 U.S. ——, —— —— (2012) (slip op., at 4) (quoting *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed.2d 389 (2000)). And an "unreasonable application of" those holdings must be "'objectively unreasonable,'" not merely wrong; even "clear error" will not suffice. *Lockyer v. Andrade*, 538 U.S. 63, 75–76, 123 S. Ct. 1166, 155 L. Ed.2d 144 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. ——, —— (2011) (slip op., at 13).

*White v. Woodall*, No. 12-749, 2014 WL 1612424, at *4 (U.S. Apr. 23, 2014).

### III. TRIAL COURT'S JURISDICTION

The Magistrate Judge found Ferrell's first ground for relief did not state a constitutional violation. I agree.

In his objections to the Magistrate Judge's report, Ferrell argues although he initially presented his jurisdictional issue as a matter of state law in his initial appeal to the Ohio Court of Appeals, he subsequently presented the issue as a federal constitutional claim in his motion for reconsideration. Ferrell states he specifically argued the adult court lacked subject matter jurisdiction over his case, violating his Fifth, Sixth, and Fourteenth Amendment rights to the United States Constitution.

The United States Court of Appeals for the Sixth Circuit has held when a habeas corpus petitioner has presented his legal and factual arguments to a state appellate court in a motion to reconsider, the issue is deemed to have been "fairly presented" to the state courts and is deemed to be properly exhausted. *Hooks v. Sheets*, 603 F.3d 316, 320 (6th Cir. 2010). Because Ferrell presented his jurisdiction issue as a federal claim in his motion for reconsideration in the court of appeals and then proceeded to present the argument to the Supreme Court of Ohio, the issue has been properly

exhausted and is reviewable under § 2254. *Id.*

To the extent the jurisdiction argument is presented as an alleged violation of Ohio law, the claim is not cognizable for federal habeas corpus review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 & n.2 (1991). Therefore, Ferrell is not entitled to habeas corpus relief regarding any alleged jurisdiction issues which may have violated Ohio law. *Id.*

The jurisdiction argument, presented in the context of a federal claim, still does not establish a federal constitutional violation. Ferrell argues the Supreme Court has recognized that transferring jurisdiction from juvenile to adult court is a critical phase which triggers constitutional due process and fundamental fairness principles, citing *Kent v. United States*, 383 U.S. 541, 554 (1966).

The Ohio Court of Appeals made the following findings of fact:

> A review of the record in this case, . . . , demonstrates that the indictment was intended to apply only to the time after Ferrell had left the family home. In context, the prosecutor's statements to the trial court concerning the amendment fully reflect this intent, and it is clear that the parties understood this intent.
> Furthermore, the prosecutor's statements in this regard are supported by RM's testimony during direct examination. In response to the prosecutor's questions, RM testified that Ferrell was forced to leave the home when he became 18 years old on May 28, 2007; thereafter he was "in and out" of the house only for visits. It is also clear from the testimony presented that, although TM had previous opportunities to make it, her disclosure came only during the month of September 2007. Since she was only 4 years old at the time, TM would not have had a long memory.
> Moreover, according to the medical history RM provided to Feingold, TM had complained of discomfort in her genital area only two weeks previous to the date on which Feingold saw her, viz., September 25, 2007. Feingold indicated such discomfort "may be associated with sexual abuse."
> Thus, the record contains support for the conclusion the indictment, both prior and subsequent to its amendment, alleged that Ferrell was over the age of 18 when the offenses were committed; therefore, the trial court did not lack jurisdiction in this case. Ferrell's first assignment of error, accordingly, is overruled.

*Ferrell*, 2010 WL 1110788, at *4–5.

Where the state court has made factual findings, I must presume the correctness of the state

court's factual determinations and will defer to them unless they are clearly erroneous.  28 U.S.C. § 2254(e)(1); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).  I review the decision of "the last state court to issue a reasoned opinion on the issue," which in this case is the decision of the Ohio Court of Appeals.  *See Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005).  This review is "limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt".  *Woodford v. Visciotti*, 537 U.S. 19, 24, (2002) (citation and internal quotation marks omitted).  The petitioner carries the burden of proof, *id.* at 25, which is "difficult to meet."  *Cullen*, 131 S. Ct. at 1398 (citation and internal quotation marks omitted).

Ferrell has not met this burden.  The finding of the Ohio Court of Appeals that Ferrell was an adult at the time the crimes were committed is not clearly erroneous.  Because of this factual determination, Ferrell's federal claim regarding why he should have been treated as a juvenile offender does not entitled him to habeas corpus relief.

## IV.  INDICTMENT

Ferrell next contends his due process rights, his right to a grand jury indictment, and a right to a fair trial were violated when the state was allowed to amend the date of the indictment from a one month period during which he was an adult to a four month period which included a time period when he was a juvenile.  The Magistrate Judge found the argument established no constitutional violation.  I agree.

In addressing this issue, the Ohio Court of Appeals explained:

> Ferrell next argues the amendment of the indictment to reflect a range of dates between May 28 and September 2007 constituted error.  This court disagrees.  Crim. R. 7(D) allows a trial court to amend an indictment "at any time," as long as

"no change is made in the name or identity of the crime charged." See also, R.C. 2941.28; R.C. 2941.30. That same rule provides: "A trial court commits reversible error when it permits an amendment that changes the name or identity of the crime charged." *State v. Headley* (1983), 6 Ohio St.3d 475, 478-479, 453 N.E.2d 716; *State v. Fairbanks*, 172 Ohio App.3d 766, 2007-Ohio-4117, 876 N.E.2d 1293 at ¶ 21.

On the other hand, in a case in which the crime remains the same, even after amendment, there is no violation of Crim. R. 7(D). *State v. Craft*, 181 Ohio App.3d 150, 2009-Ohio-675, 908 N.E.2d 476, at ¶ 23, citing *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609 at ¶ 5. To determine whether the "identity" of a crime has changed, the court must examine whether the "penalty or degree" changed. *Id.* at ¶ 24, 903 N.E.2d 609, citing *Davis*, at syllabus. In this case, the language of the original and the amended indictments remained the same, with the original indictment asserting that an adult Ferrell committed the offenses upon the 4-year-old victim. No change occurred in the potential penalty involved. *State v. Carey*, Cuyahoga App. No. 88487, 2008-Ohio-678, ¶ 15.

Moreover, the error of the date in the original indictment was "clerical" in nature, and the subsequent changes to the date that the prosecutor requested were to the same effect. See, *State v. Stacey*, Seneca App. No. 13-08-44, 2009-Ohio-3816, ¶ 10. This conclusion is supported by defense counsel's acquiescence to the first amendment requested by the prosecutor.

Finally, this court has previously noted that, in cases involving sexual abuse against children, indictments need not state with specificity the dates of the alleged abuse, as long as the prosecution establishes that the offenses occurred within the time frame alleged. *State v. Coles*, Cuyahoga App. No. 90330, 2008-Ohio-5129, ¶ 33, citing *State v. Yaacov*, Cuyahoga App. No. 86674, 2006-Ohio-5321, ¶ 17. Allowances must be made in cases in which the child-victim cannot be expected to remember exact dates and times, and in which the child-victim and alleged perpetrator are related and the course of conduct may have occurred over a period of time. *Id.*, citing *State v. Robinette* (Feb. 28, 1987), Morrow App. No. CA-652.

Of course, an exception to the foregoing "general rule" exists when the state's failure to allege a specific date results in "material detriment to the accused's ability to fairly defend himself," e.g., in cases in which the defendant presents an alibi. *State v. Yaacov*, supra, ¶ 18. Ferrell did not, however, present such a defense; therefore, this court cannot find he suffered any material detriment. *Id.*, at ¶ 24.

Since the uncertainty in the dates resulted from Ferrell's inconsistent subsequent visits after his ejection from the house, and related to the young age of the victim, the amendment did not change the name or identity of the crime charged. Ferrell's second assignment of error also is overruled.

*Ferrell*, 2010 WL 1110788, at *5–6.

It has long been held amendments to indictments are considered "primarily a matter of state law." *Watson v. Jago*, 558 F.2d 330, 337 (6th Cir. 1977). Thus, to the extent Ferrell's argument

10

regarding the amendments to the indictment violated state law, the argument is not cognizable on federal habeas corpus review. *Estelle*, 502 U.S. 67–68 & n.2.

The Ohio Court of Appeals found the original indictment had a "clerical" error in the date and the subsequent changes requested by the prosecution had the same effect as the original indictment. *Ferrell*, 2010 WL 1110788, at *5. Further, the court noted Ohio law did not require specificity of dates. *Id.* Although specific dates are important for alibi defenses, the court of appeals noted such a defense was not presented by Ferrell and he suffered no detriment from the date changes. *Id.* at *6. Finally, the court found the language of the original indictment and subsequent amendments remained the same, with the original indictment asserting an adult Ferrell committed the offenses upon the 4-year-old victim. Further, no change occurred in the potential penalty involved. *Id.* at *5.

As a state prisoner, Ferrell must establish this decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 2014 WL 1612424, at *4 (internal quotation marks and citation omitted). Ferrell has not met this burden. He fails to meet the "difficult" standard of showing how the decision of the Ohio Court of Appeals "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* (internal quotation marks and citations omitted). Accordingly, Ferrell is not entitled to habeas corpus relief on this issue.

## V.  CERTIFICATE OF APPEALABILITY

A habeas corpus petitioner is not entitled to a certificate of appealability as a matter of right, but must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). The petitioner need not demonstrate he should prevail on the merits. Instead, he must "demonstrate that the issues are debatable among jurists of reason", or the issues deserve "encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 892-93 & n.4 (1983). Ferrell's petition has not met this standard. I certify there is no basis on which to issue a certificate of appealability for the reasons stated in this order. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

## VI. CONCLUSION

Accordingly, the Magistrate Judge's report and recommendation (Doc. No. 9) is adopted and the petition for a writ of habeas corpus is dismissed.

So Ordered.

 s/ Jeffrey J. Helmick
United States District Judge